UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

   - against -

RUDOLPH BECKFORD,

               Defendant.

------------------------------------------X

05 Cr. 944 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On December 20, 2005, Defendant Rudolph Beckford ("Beckford") appeared before the Honorable Debra C. Freeman of this District and pleaded guilty to one count of Conspiracy to Commit Theft by a Bank Employee and to Make a False Entry in a Bank Record, and one count of Theft by a Bank Employee. Beckford's plea was accepted on January 17, 2006. For the reasons set forth below, Beckford will be sentenced to 24 months' imprisonment, to be followed by a three-year term of supervised release. Beckford will also be required to pay restitution of $182,000 and a special assessment of $200.

**Prior Proceedings**

      Beckford voluntarily surrendered to the Federal Bureau of Investigation ("FBI") on September 13, 2005. An indictment was

1

filed in the Southern District of New York on September 8, 2005, charging that from July 1999 to July 2004, Beckford and other employees of a Federal Reserve bank conspired to commit theft and make a false entry in a bank record, in violation of 18 U.S.C. §§ 1005 and 371 ("Count One"). The indictment further charged that from July 1999 through July 2004, Beckford committed theft by a bank employee in violation of 18 U.S.C. § 656 ("Count Two"). On December 20, 2005, Beckford appeared before the Honorable Debra C. Freeman of this District and allocuted to his criminal conduct as charged in the indictment. Defendant's sentencing is scheduled for May 17, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to

2

promote respect for the law, and to provide
         just punishment for the offense;

    (B)  to afford adequate deterrence to criminal
         conduct;

    (C)  to protect the public from further crimes of
         the defendant; and

    (D)  to provide the defendant with needed
         educational or vocational training, medical
         care, or other correctional treatment in the
         most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range
    established for --

    (A)  the applicable category of offense committed
         by the applicable category of defendant as set
         forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the
    Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities
    among defendants with similar records who have been
    found guilty of similar conduct; and

(7) the need to provide restitution to any victims of
    the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

         The Court adopts the facts set forth in the Probation

3

Department's Presentence Investigation Report ("PSR") with respect to Beckford's personal and family history.

**The Offense Conduct**

From approximately 1999 through 2004, Beckford was employed as a branch manager at a New York City branch (the "Branch") of Deutsche Bank Trust Company Americas ("Deutsche").

On multiple occasions, from at least 2001 to July 2004, Beckford received cash from a teller at the Branch by giving a personal check written to "Cash" to the teller in the knowledge that the teller would not process the check.

Beckford was aware that other Branch employees were engaged in the same activity, which he allowed to continue. He did not report the problem to upper management because he was involved in the activity.

On July 2, 2004, an employee of Deutsche received an anonymous call from someone later identified as another employee of Deutsche. The anonymous caller stated that a Deutsche employee named Ruth Gumbs had wired money from Deutsche directly into her personal account. The anonymous caller also stated that tellers at the Branch were engaged in a scheme to cash personal checks of Deutsche employees without properly processing the checks, and thus

4

without actually withdrawing money from the employee's personal accounts.

On July 6, 2004, auditors performing an internal audit of the Branch discovered a cash shortage of $257,810. In addition, auditors found several employee personal checks in teller drawers, which checks had not been submitted for payment as required by Deutsche policy.

On July 6, 2004, Beckford directed an employee of the Branch to falsely enter into records of that bank, including a vault proof sheet, that $257,810 in "mutilated" cash had been removed from the vault on or about July 2, 2004, and the employee did so.

On July 6, 2004, the auditors found bank documents indicating that on July 2, 2004, $257,810 in "mutilated" cash was delivered to the Federal Reserve Bank. The auditors contacted officials at the Federal Reserve Bank, who indicated that the Federal Reserve Bank had not received any "mutilated" cash from the Branch on July 2, 2004.

Beckford voluntarily surrendered to the FBI on September 13, 2005.

The approximate amount of loss attributable to Beckford

5

in the instant offense is $182,000.

**The Relevant Statutory Provisions**

The maximum term of imprisonment for Count One is five years, pursuant to 18 U.S.C. § 371. The maximum term of imprisonment for Count Two is thirty years, pursuant to 18 U.S.C. § 656.

If a term of imprisonment is imposed for Count One, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2). If a term of imprisonment is imposed for Count Two, the Court may impose a term of supervised release of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1). Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

The Defendant is not eligible for probation because the offense enumerated in Count Two is a Class B felony, pursuant to 18 USC 3561(a)(1).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at

least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine for Count One is $250,000, pursuant to 18 U.S.C. § 3571. The maximum fine for Count Two is $1,000,000, pursuant to 18 U.S.C. § 656.

Full restitution to the victim is required under 18 U.S.C. §§ 3663A and 3664.

A special assessment in the amount of $100 per count is mandatory. 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2005 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes. U.S.S.G. § 1B1.11(a).

Counts One and Two are grouped together, as the offense charged in Count Two is one of the underlying offenses charged in Count One. The offense level for the group shall be the highest offense level of the counts in the group. § 3D1.3(a).

7

The Guideline for violation of 18 U.S.C. § 371 is found in section 2X1.1, which directs that the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for intended offense conduct which can be established with reasonable certainty, be utilized. § 2X1.1(a). The Guideline for the underlying offenses of violations of 18 U.S.C. §§ 656 and 1005 is found in section 2B1.1. The Guideline applicable to the offense charged in Count Two, a violation of 18 U.S.C. § 1005, is likewise found in section 2B1.1.

Pursuant to section 2B1.1(a)(1), the base offense level is 7. Pursuant to section 2B1.1(b)(1)(F), there is a ten-level increase because the loss amount was over $120,000 but less than $200,000.

**Disputed Adjustments**

The government contends that Beckford's offense level should be increased by five levels, on the basis of adjustments for an aggravating role in the offense, U.S.S.G. § 3B1.1, and abuse of a position of trust, U.S.S.G. § 3B1.3. For the reasons that follow, an aggravating role adjustment will not apply, but Beckford's offense level will be increased by two levels to reflect an adjustment for abuse of a position of trust.

The government argues that Beckford should receive a

8

three-level increase in his offense level because he was a manager or supervisor of criminal activity involving five or more participants, pursuant to section 3B1.1. Beckford responds that his position as a branch manager is not a sufficient basis for the adjustment in the absence of a showing that he managed or supervised the commission of the offense.

Section 3B1.1(b) provides for a three-level enhancement if a defendant "was a manager or supervisor [of a criminal activity that] involved five or more participants . . . ." § 3B1.1. Since Beckford acknowledges that more than a dozen individuals were involved in the criminal activity, the crucial question is whether he exercised supervisory authority over the commission of the offense.

As the Second Circuit has stated, "[a] defendant may properly be considered a manager or supervisor if he exercised some degree of control over others involved in the commission of the offense . . . or played a significant role in the decision to recruit or to supervise lower-level participants." United States v. Burgos, 324 F.3d 88, 92 (2d Cir. 2003) (internal quotation marks omitted). The fact that a defendant holds a supervisory position in the workplace is not sufficient grounds for an adjustment without a showing that the defendant actually supervised the criminal activity. United States v. DeGovanni, 104 F.3d 43, 46 (3d Cir. 1997) (holding police sergeant not a supervisor for purposes

of § 3B1.1 where his role in criminal activity "constituted mere participation, and nothing more"); United States v. Jobe, 101 F.3d 1046, 1065-66 (5th Cir. 1996) (vacating § 3B1.1 adjustment in absence of any "evidence that [defendant bank director] managed or supervised any of his codefendants or any other people in connection with the illegal acts"); see also U.S. v. Liebman, 40 F.3d 544 (2d Cir 1994) (upholding adjustment for employer "responsible for overseeing" the criminal activity).

Here, the mere fact that Beckford was the manager of the Branch will not support the application of a three-level adjustment under § 3B1.1. The government notes two specific facts that it claims support its argument for the adjustment: First, that Beckford called an employee meeting at which he addressed the check-cashing issue. Second, that he directed another bank employee to falsify bank records to conceal the offense. As to the meeting, Beckford contends that he called the meeting after discovering the extent of the criminal activity, which pre-dated his participation. He notes that he used the meeting to inform all the participants that the criminal activity had to cease, and that all outstanding checks would have to be processed. The government has not made any showing to the contrary. Thus, Beckford's action in calling the meeting is described more properly as an attempt to halt the criminal activity rather than the exercise of managerial or supervisory authority over the commission of the offense.

Beckford's actions in directing another bank employee to falsify records to conceal the criminal activity are likewise insufficient to support an adjustment under section 3B1.1. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." § 3B1.1, cmt, n.2. "A person who is not criminally responsible for the commission of the offense . . . is not a participant." Id., cmt, n.1. Here, the government has made no showing that the employee directed by Beckford to make the false record entry was criminally responsible for the offense, because is not clear on the record that the employee knowingly made a false entry. Because it has not been shown that the employee who made the record entry is a participant in the commission of the offense, Beckford cannot be deemed a supervisor solely by virtue of directing the false record entry. Accordingly, the three-level adjustment for section 3B1.1(b) will not apply.

The government also contends that Beckford should receive a two-level increase in his offense level because he abused a position of trust in the commission of the offense, pursuant to section 3B1.3. Beckford argues that this enhancement may not be employed because he claims that 18 U.S.C. § 656, the statute governing theft by a bank employee, includes abuse of trust as an essential element of the offense.

Beckford is correct that, under the Guidelines, the abuse

11

of trust adjustment "may not be employed if an abuse of trust . . . is included in the base offense or specific offense characteristic." U.S.S.G. § 3B1.3. Application of the adjustment requires that "the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense . . . ." § 3B1.3, Commentary, Application Note 1.

However, section 656 makes no mention of abuse of trust as an element of the offense. It merely requires that the embezzlement or theft be committed by an employee of the bank. 18 U.S.C. § 656. The Second Circuit has previously upheld the application of the abuse of trust adjustment to a defendant charged under 18 U.S.C. § 656, where the defendant's managerial role facilitated the commission of the offense. United States v. Marsh, 955 F.2d 170, 171 (2d Cir. 1992).

As the manager of the Branch, Beckford occupied a position "characterized by professional or managerial discretion" that facilitated the commission and concealment of the offense. U.S.S.G. § 3B1.3, Commentary, Application Note 1. As noted in the PSR, Beckford made a decision not to report the actions of other bank employees in cashing checks they knew would not be processed. He also certainly was aware that detection of his own offense was made significantly less likely because, as branch manager, there was no other Branch employee in a position to supervise his

12

actions.

For these reasons, Beckford will receive a two-level adjustment to his offense level pursuant to section 3B1.3.

**Remaining Calculations**

Basely on his plea allocution, Beckford has shown recognition of responsibility for the offense. Pursuant to section 3E1.1(a), the offense is reduced two levels. Further, because Beckford's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is sixteen or greater, the offense level is reduced one additional level.
§ 3E1.1(b).

The Defendant's resulting adjusted offense level is 16.

Beckford has one prior criminal conviction for disorderly conduct, for which he paid a fine of $125 on August 3, 1990. This prior conviction results in zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 16 and a Criminal History Category of I, the Guidelines range for imprisonment is twenty-one to twenty-seven months.

The Guidelines range for a term of supervised release for Count One is at least two years but not more than three years. § 5D1.2(a)(2). The Guidelines range for a term of supervised release for Count Two is at least three years but not more than five years. § 5D1.2(a)(1). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute. § 5D1.1(a).

Beckford is not eligible for probation because the offense in Count Two is a Class B felony. § 5B1.1(b)(1).

The Guidelines recommend a fine range of $6000 to $1,000,000 for the instant offense. § 5E1.2(c)(3)-(4). The Guidelines suggest that subject to the defendant's ability to pay, in imposing a fine, the court should consider the expected costs to the Government of any imprisonment, probation, or supervised release. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,933.80 to be used for imprisonment, a monthly cost of $287.73 for supervision, and a monthly cost of $1,675.23 for community confinement.

In cases of an identifiable victim, restitution shall be ordered for the full amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A. U.S.S.G. § 5E1.1(a)(1).

14

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

Pursuant to all of the factors listed in section 3553(a), it is hereby determined that a Guidelines sentence is warranted.

## The Sentence

For the reasons stated above, Beckford is hereby sentenced to twenty-four months of imprisonment, to be followed by a three-year term of supervised release.

As Beckford has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community, he is deemed a good candidate for voluntary surrender. Beckford is therefore directed to report to the Bureau of Prisons no later than June 28, 2006, to commence a twenty-four-month term of

15

imprisonment. Beckford is further directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Beckford be supervised by the district of his residence.

As mandatory conditions of this supervised release, Beckford shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended based on a determination that the Defendant poses a low risk of future substance abuse. Furthermore, the standard conditions of supervision (1-13) shall be imposed with the following special conditions:

(1) Beckford shall provide the probation officer with access to any requested financial information.

(2) Beckford shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

Beckford shall make restitution payable to the Clerk, U.S. District Court, for disbursement to Deutsche Bank Trust Company Americas in the amount of $182,000. In consideration of the factors set forth in 18 U.S.C. § 3664(f)(2), the restitution

shall be paid in monthly installments of ten percent of gross monthly income over a period of supervision to commence 30 days after release from custody. Beckford shall notify the United States Attorney for this district within thirty days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), the fine in this case shall be waived. A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for May 17, 2006.

It is so ordered.

**New York, NY**
**May /6 , 2006**

ROBERT W. SWEET
U.S.D.J.